FILED (JS)
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

21 AUG 20 PH 4:11

# UNITED STATES DISTRICT COURT

at Louisville, Western District of Kentucky

Civil Action No: 3:21-CV-00217-RGJ

USPS Cert # 7018 1830 0001 2089 4549

(USDC)

| | |
|---|---|
| James Richard Huffman IV<br>Plaintiff - Pro se<br><br>V.<br><br>Katherine Williams, Jessica Fortwengler, Sasha Grey, Courtney Forgy, Scott Jordan, Rebecca Barker, Dagan Moon, Amy Robey, Cookie Crews, and John Dunn<br>Defendants | *AMENDED COMPLAINT<br>42 U.S.C. Section 1983<br>1st, 5th, 8th, 9th, and 14th<br>Amendments to the US.<br>Constitution<br><br><br><br><br>noted 8-18-21 |

## Amended Complaint

\*     \*     \*     \*     \*

## I. Jurisdiction and Venue

1) This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation under color of law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injuctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Proceedure

2) The United States District Court is an appropriate venue under 28 U.S.C. section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. Plaintiff

3) Plaintiff, James Richard Huffman IV, state ID # 296645, is and was at all times mentioned herein a prisoner of the state of Kentucky, a ward of the state, in the care and custody of the Kentucky Department of Corrections (KDOC). He is currently confined in Luther Luckett Correctional Complex (LLCC) in La Grange Kentucky. Plaintiff is not a Corporation.

## III. Defendants

4) Defendant, Katherine Williams, was a nurse medical provider for Wellpath, Correct Care Solutions at LLCC and at all times mentioned herein assigned to LLCC.

5) Defendant, Jessica Fortwengler, is the medical doctor for Wellpath, Correct Care Solutions at LLCC and at all times mentioned herein assigned to LLCC.

6) Defendant, Sasha Grey, is a nurse for Wellpath Correct Care Solutions at LLCC and at all times mentioned herein assigned to LLCC.

7) Defendant, Courtney Forgy, is a nurse for Wellpath, Correct Care Solutions at LLCC and at all times mentioned herein assigned to LLCC.

8) Defendant, Shane Johnston, is a nurse for Wellpath, Correct Care Solutions at LLCC and at all times mentioned herein assigned to LLCC.

9) Defendant, William Betz, is a radiologyst for Trident

Care and performed x-rays and generated an x-ray report of the Plaintiff on the date mentioned herein at LLCC.

10) Defendant, SCOTT Jordan, was the Warden of Operations at LLCC on the date of Plaintiff's initial injury and was responsible for his duties as Warden.

11) Defendant, Rebecca Barker, is the Deputy Warden of Special Services at LLCC and direct supervisor of Defendant, Dagon moon, at the time of being notified of Moons actions in a letter and appeal dated 12-4-2020 and was responsible for her duties as Deputy Warden. and at all times mentioned herein assigned to LLCC.

12) Defendant, Dagon Moon, is the Special Services, Legal Services, and Grievance Coordinator Officer for LLCC and at all times mentioned herein assigned to LLCC.

13) Defendant, Amy Robey, was the Interim Warden of Operations at LLCC on the date of Plaintiffs initial injury and replaced Defendant, Scott Jordan, as Warden of Operations at LLCC. She was Warden of Operations at LLCC at the time of being notified of Defendant Moons actions in a letter and appeal dated 12-29-2020 and was responsible for her duties as Warden.

14) Defendant, Cookie Crews, is the Commissioner of the KDOC and at all times mentioned herein was responsible for the KDOC and was assigned to Commissioner of the KDOC, and has the ability to change KDOC policy.

15) Defendant, John Dunn, is the Ombudsman of the KDOC and at all times mentioned herein was assigned to Ombudsman of the KDOC and was responsible for his duties as Ombudsman.

16) All Defendants at all times herein acted under

The color of state law and are being sued in their individual and official capacities.

## IV. Facts

17) Plaintiff, James Huffman, realleges and incorporates by reference Docket entries #1 and #8, all pages, paragraphs, and exhibits, Civil Action No: 3:21-CV-00217-RGJ, in their entirety.

18) On 5-25-2020, Plaintiff, James Huffman, was involved in a physical altercation with inmate, Bryant Hayes, #133550 (Exhibit-PXA). During the course of the altercation, Huffman was struck in the head and fell face first into claybed locker one (Exhibit-PXB). And,

19) The claybeds and claybed lockers are made of hardened metal and fines are enforced against LLCC for their placement in the dayrooms at LLCC. Plaintiff has been denied his open record request for the Audit/Budget that lists the fine LLCC is charged for the illegal placement of the claybeds and claybed lockers (Exhibit-PXO). And,

20) Defendant, Scott Jordan, was aware of the threat to the physical safety of the Plaintiff by the installation of the claybeds and claybed lockers. And,

21) Defendant, Scott Jordan, has a duty to care and a duty to protect the Plaintiff.

22) On 5-26-2020 LLCC Internal Affairs Officer, Lt. Berton Barc, conducted an investigation into the possibility of the altercation between Plaintiff Huffman and Hayes and was able to determine from camera footage said

altercation did occurr. (Exhibit-PXA). And,

23) Plaintiff Huffman was placed in restraints and escourted by Officer Bare and Officer Garcia to the Wellpath, Correct Care Solutions medical unit at LLCC. Defendant, Sasha Grey, screened Plaintiff in a Pre-Segregation screening and was the first member of medical staff to be made aware of the trauma to his face (Exhibit-PXC). And,

24) Plaintiff Huffman showed signs of facial trauma, as photographs taken minutes after the screening testify to (Exhibit-PXA) and Defendant Grey refused to send him to an emergency care facility despite the fact she had the authority and responsibility to do so.

25) Plaintiff Huffman was released by Defendant Grey from the medical unit and escourted to the Restrictive Housing Unit (RHU) (Exhibit-PXF) with a prescription of Aceruminophen (Exhibit-PXC) that the RHU pill-call nurses refused to dispense. And,

26) Plaintiff Huffman filled out a sick-call slip concerning his face pain and on 5-27-2020, Defendant, Sasha Grey, addressed the complaint at sick-call (Exhibit-PXC). Grey noted in the report, "IM face noted to be asymetrical. Bruising and swelling to the left eye," (Exhibit-PXC). And,

27) Plaintiff Huffman pleaded Defendant Grey to send him to an emergency care facility and she refused to send him despite the fact she had the authority and responsibility to do so.

28) On 5-28-2020, Defendant, Katherine Williams, saw Plaintiff Huffman for a medical provider sick-call addressing his complaint of his facial pains (Exhibit-PXC) at which time Plaintiff told Williams he had a left orbital bone

fracture. Plaintiff pleaded Williams to send him to an emergency care facility. Defendant Williams refused to send him to a hospital and also refused to prescribe any medication to treat his pain despite having the authority and responsibility to do so.

29) On 5-29-2020, Defendant, William Betz, came to LLCC and performed x-rays of Plaintiff Huffman's head region and prepared the x-ray report with his findings (Exhibit-PXD). Defendant Betz's x-ray report (Exhibit-PXD) contains misleading wording, stating the Plaintiffs' "orbits are grossly normal," and "There is no radiographic evidence of gross acute fractures." And,

30) In one of the said x-rays, a large section of disturbed bone can be noted in the lower portion of the left eye (Exhibit-PXD). And,

31) Defendant Betz failed to accurately report the true extent of damage present in the x-rays of Plaintiff Huffmans head region. And,

32) Upon Information and Belief, Defendant Betz intentionally was misleading in his report.

33) On 5-31-2020, Defendant, Courtney Forgy, saw Plaintiff Huffman for a sick-call concerning his complaint of "Face Numb / Broken Bone" (Exhibit-PXC). Forgy noted in the sick-call report that Plaintiff rated his pain as 10 on a scale from 1 to 10, 10 being the worst (Exhibit-PXC). Huffman informed Forgy that the bones under his left eye were broke, that the bones moved, and despite the pain, Plaintiff manipulated the bones to proove his honesty. Plaintiff pleaded to be sent to a hospital. And,

34) Defendant Forgy refused to send Plaintiff Huffman to

an emergency care facility despite having the authority and responsibility to do so. And,

35) On 6-1-2020, Wellpath, Correct Care Solutions employee, Kristina Smith, performed a chart review for Plaintiff Huffman (Exhibit-PXC) which testifies to the fact he had not been prescribed Acetominophen or Elavil for pain as Defendant Forgy stated in her sick-call report on 5-31-2020 (Exhibit-PXC). And,

36) Defendants Grey, Williams, and Forgy failed to treat Plaintiff Huffmans injury though they had a duty and responsibility to do so. And,

37) Defendant, Jessica Fortwengler, had oversight of the nurses who practiced medicine under her. And,

38) Defendant Fortwengler had the authority and responsibility to care for Plaintiff Huffman.

39) On 6-4-2020, Defendant, Katherine Williams, saw Plaintiff Huffman for a medical provider sick-call addressing his complaint of "Face Numb/Broken Bone (Exhibit-PXC) at which time Defendant, William Betz's, x-ray report was presented to Huffman and that said report did not confirm any bone fractures. And,

40) Plaintiff Huffman demanded Williams perform a physical examination of his left eye. After examination, Williams noted in the sick-call report the "distinct lump" (Exhibit-PXC) but refused to send Huffman to an emergency room despite having the authority and responsibility to do so. And,

41) Defendant Williams noted in her report (Exhibit-PXC) that she is requesting approval for a CT scan of Plaintiff even though she had the authority to send him to an emergency care facility for a CT scan.

42) On 6-8-2020, Defendant, Courtney Forgy, saw Plaintiff Huffman for sick-call (Exhibit-PxC) and he begged her to send him out to a hospital for his broken bones. Defendant Forgy refused to send him despite having the authority and responsibility to do so. And,

43) Forgy let Plaintiff Huffman know that Wellpath, Correct Care Solutions was in the process of getting approval for a CT Scan of his head.

44) On 6-19-2020, Defendant, Shane Johnston, saw Plaintiff Huffman for sick call concerning the complaint of "Elbow/Face Pain" (Exhibit-PxC) and failed to send Huffman to an emergency center despite having the authority and responsibility to do so. And,

45) Defendant Johnston noted in his report (Exhibit-PxC) that he informed Plaintiff that Scheduling for Wellpath, Correct Care Solutions was working on getting a referral for a CT scan of his head.

46) On 6-23-2020, Defendant, Katherine Williams, saw Plaintiff, James Huffman, for a medical provider sick-call concerning his complaint of "Elbow/Face Pain" (Exhibit-PxC). Huffman was refused treatment or to be sent to an emergency care facility. And,

47) Williams noted in her report (Exhibit-PxC) and let the Plaintiff know that Scheduling for Wellpath was working on getting a referral for a CT scan of his head region.

48) On 7-10-2020, 45 days after Wellpath, Correct Care Solutions Staff were made aware of Plaintiff Huffmans facial trauma, he was escourted by LLCC Security Staff to Norton, Brownsboro Hospital to undergo a CT Scan of his head (Exhibit-PxC). And,

49) Huffman was denied addmittance into the emergency room despite his close proximity. Once the CT scan was complete he was escourted back to the prison.

50) Malisa S. Lester, M.D. read, interpreted and reported the results from the CT scan of Plaintiff Huffman (Exhibit-PXE). Her report states Huffman has "multiple left-sided facial bone fractures," and "an inferiorly displaced left orbital floor fracture is demonstrated, with a fracture fragment displaced by approximately 2.6 cm" (Exhibit-PXE). And,

51) On 7-13-2020, Defendant, Katherine Williams, generated a Progress Note in Plaintiff's medical chart (Exhibit-PXC) logging some of Dr. Lester's CT Scan Report. Despite this proof of his facial trauma, Williams failed to act and send him to an emergency care facility. In the Progress Note, Williams writes, "Will refer to oral and maxillofacial surgery" (Exhibit-PXC). And,

52) On 7-17-2020, Defendant Williams saw Plaintiff Huffman for a medical provider sick-call (Exhibit-PXC) at which time the results from the CT scan were reported to Plaintiff. Huffman pleaded her to send him to an emergency care facility now that he had confirmation his orbital bone was fractured and Williams refused to send him out for treatment. And,

53) Defendant Williams let Plaintiff know that Scheduling for Wellpath was in the process of obtaining him an appointment with a facial surgeon.

54) On 7-24-2020, Defendant, Courtney Forgy, saw Plaintiff Huffman for sick-call concerning his complaint of "Eye crosses where orbital fracture occurred," (Exhibit-PXC). Forgy refused to send him to an emergency care facility

even though she knew his orbital was fractured.

55) On 8-18-2020, Defendant, Katherine Williams, saw Plaintiff Huffman for a medical provider sick-call (Exhibit-PXC) at which he questioned as to why he had not received any medical treatment for his trauma. And,

56) Defendant Williams let Huffman know that Scheduling for Wellpath, Correct Care Solutions was in the process of obtaining him an appointment with a facial surgeon and there was nothing she could do.

57) On 9-1-2020, Defendant, Courtney Forgy, saw Plaintiff, James Huffman, for sick-call (Exhibit - PXC) at which time he questioned as to why he had not received any medical treatment for his trauma. And,

58) Defendant Forgy let Huffman know that Scheduling for Wellpath, Correct Care Solutions was in the process of obtaining him an appointment with a facial surgeon.

59) On 9-11-2020, Defendant, Katherine Williams, logged a medical provider follow-up care in Plaintiff, James Huffman's, medical chart stating, "Provider was informed in order for inmate to be seen by UofL Ortho maxillary inmate has to be seen through ER" (Exhibit-PXC). And,

60) The UofL Ortho Maxillary Surgery unit (OMS) does not schedule appointments for new patients who have not first visited the emergency room. And,

61) The two months Plaintiff was supposedly waiting for an appointment to be scheduled cannot be true.

62) On 9-11-2020, 108 days after Wellpath, Correct Care Solutions staff first became aware of Plaintiff, James Huffman's, facial trauma and 73 days after the CT scan confirming his facial trauma, he was

finally transported by LLCC security staff to the UofL Hospital emergency room (Exhibit-PXC). And,

65) Any reasonable person can see that the extreme delay in presenting Plaintiff Huffman to an emergency care facility from the onset of his trauma and after the CT scan confirmed the extent of his trauma is an abuse of authority and of responsibility and duty. And,

66) Plaintiff Huffman was seen in the ER by a surgeon from the OMS unit, received a second CT scan, and had photographs and measurements taken of his left eyeballs displacement. Plaintiff was scheduled an appointment with the Hospitals OMS unit and also an appointment with the UofL Ophthalmologist (Exhibit-PXC). And,

67) Wellpath, Correct Care Solutions staff refused to send Plaintiff to his appointment with the UofL Ophthalmologist.

68) On 9-18-2020, Plaintiff, James Huffman, was escorted by LLCC Security staff to the UofL Hospital to see the OMS unit surgeons (Exhibit-PXC). At his appointment, Plaintiff learned that his bones had not been treated in time and had set improperly. As such, his remedies are severely restricted and his injuries permanently irrepairable. And,

69) Plaintiff Huffmans trauma has resulted in many conditions. His left eye crosses and gives him double vision. He suffers from a constant twitching and blinking of his left eye. He suffers facial nerve damages that has left much of his face and mouth completely numb causing complications. He suffers the horrible pains of severe facial trauma without any medical aid

or pain managment. He experiences pains due to injuries and facial Trauma. He currently needs surgery to make him as whole as possible. He needs recovery and rehabilitation to make him as whole as possible and will need it for the rest of his life. He suffers horrible embarrassment due to his disfigurements. He suffers horrible mental anguish due to his injuries. And,

70) Plaintiff Huffman suffers injuries that are irrepairable to his mind and body that cannot be healed. And,

71) All Defendants have a duty and responsibility to care for Plaintiff Huffman.

72) On 10-1-2020, Plaintiff Huffman petitioned the government for redress of his grievance of being denied treatment of his injuries, GN 20-959 (Exhibit-PXG). And,

73) On 10-30-2020, Defendant, Dagon Moon, denied grievance, GN 20-959 (Exhibit-PXG) thus denying Plaintiff the grievance System. And,

74) On 11-9-2020, while Checking the status of grievance, GN 20-959 (Exhibit-PXG) Plaintiff learned from the grievance aid, Gary Acree, #277543 that said grievance had been denied by Defendant Moon. And,

75) Plaintiff Huffman immediately filed a new grievance, NG 20-1065 (Exhibit-PXH) seeking redress for Defendant Moons action to deny him the right to grieve GN 20-959 (Exhibit-PXG). And,

76) On 11-10-2020, Defendant Moon denied Plaintiff the grievance System by denying grievance, NG 20-1065 (Exhibit-PXH). And,

77) Defendant Moon's acts of denying Plaintiff Huffman his rights to grieve issues are part of his Pattern and Practice

to deny Plaintiff of his right to grieve, protected by the U.S. Constitution, whereby Defendant Moon deprived Plaintiff of his rights and liberties. This practice "hides" misconduct and criminal retaliation of prison Staff by keeping it hidden from the grievance system and attempts to deny Plaintiff exhaustion of the grievance system. And,

78) It is common practice of Defendant Moon to deny Plaintiff Huffman of the federally protected rights under the U.S. Constitution to petition the government for redress of his grievances. And,

79) Upon Information and Belief, Defendant Moon denied grievances, GN 20-959 (Exhibit - PXG) and NG 20-1065 (Exhibit - PXH) to hide from the Grievance Mechanism the actions, inactions, and neglect of Defendants Williams, Fortwengler, Grey, Furgy, Johnston, Betz, Jordon, and himself. And,

80) On 6-8-2021, Defendant, Dagon Moon, denied Plaintiff Huffman access to the prison Legal Mail Copy Service. And,

81) Plaintiff Huffman immediately petitioned the government for redress of his grievance at being denied the Legal Mail Copy Services by filing grievance, NG 21-318 (Exhibit - PXI). And,

81) Defendant Moon issued Plaintiff Huffman a disciplinary report, DR LLCC-2021-0001195 (Exhibit - PXJ), that claims Huffman was, "requesting Legal Copies be made under false pretenses". And,

82) On 6-8-2021, Defendant Moon denied Plaintiff the grievance mechanism by rejecting his grievance, NG 21-318 (Exhibit - PXI), declaring it non-grievable

because the issue of the grievance was now part of disciplinary report, DR LLCC-2021-0001195 (Exhibit-PXJ). And,

83) Said disciplinary report (Exhibit-PXJ) was dismissed by the Adjustment Officer who found Plaintiff was not attempting to obtain Legal Mail Copies under false pretenses. And,

84) Defendant Moon issued said disciplinary report (Exhibit-PXJ) to Plaintiff Huffman as part of his Pattern and Practice to deny Huffman of his right to grieve, protected by the U.S. Constitution, whereby Defendant Moon deprived Plaintiff of his rights and liberties. This practice "hides" misconduct and criminal retaliation of prison staff by keeping it hidden from the grievance system. And

85) Upon Information and Belief, Defendant Moon issued Plaintiff Huffman a disciplinary report (Exhibit-PXJ) to hide from the grievance system his actions to deny Huffman access to the prison Legal Mail Copy Services on 6-8-2021. And,

86) Defendant Moon denied Plaintiff Huffman of the first Step he must take in order to protect his rights as a prisoner by denying him the right to grieve with the grievance System (Exhibits - PX 6, H, I). And,

87) Upon Information and Belief, it is a miscarriage of Justice to allow the deprivation of inmate's rights to go unpunished when that deprivation is committed under the color of law, by government officials who are abusing their authority, such as in this case, and then preventing Plaintiff from grieving it. And,

88) Upon Information and Belief, Defendant Moon's

concentration of training is not focused on protecting the rights of Plaintiff, but more in line as an obstructionist to prevent the rights of Plaintiff from being protected against the deprivation of his unalienable rights. And,

89) All Defendants have a duty to protect Plaintiff's rights, and a duty to care, and a duty to act when they are made aware of these events and actions in this complaint. And,

90) On 12-4-2020, Plaintiff Huffman appealed Moon's actions to deny him the right to grieve grievances GN 20-959 (Exhibit-PXG) and NG 20-1065 (Exhibit-PXH) to his immediate supervisor, Deputy Warden Rebecca Barker (Exhibit-PXK). Barker made no attempts to correct the actions of Moon to deny Plaintiff the grievance system. And,

91) On 12-29-2020, Plaintiff Huffman appealed Moon's action to deny him the right to grieve grievance GN 20-959 (Exhibit-PXG) to the Warden of Operations, Defendant, Amy Robey (Exhibit-PXL). Robey made no response or attempts to correct Moons' act denying Plaintiff the right to grieve. And,

92) On 7-5-21 Plaintiff Huffman appealed Moon's actions to deny him the right to grieve grievances GN 20-959 (Exhibit-PXG) and NG 20-1065 (Exhibit-PXH) to KDOC Commissioner, Defendant, Cookie Crews (Exhibit-PXM). Crews made no reply or attempts to correct Moons actions to deny Plaintiff the right to grieve. And,

93) On 7-19-2021, Ombudsman for the KDOC, Defendant, John Dunn, replied to Plaintiff Huffmans appeal he sent to Defendant Crews. Defendant Dunn claims in his

letter (Exhibit - PXN) that his review of the facts
does not support the Plaintiffs allegations that
Moon denied him the grievance system. And,

94) Defendant Dunn's letter (Exhibit - PXN) states that,
"research shows that policy has not been changed at
Luther Luckett. The grievance coordinator is enforcing
the policy as written." And,

95) Grievance, NG 20-1065 (Exhibit - PXH) states on the
side in red ink, "NG #3 11-9-2020" with Dagan
Moons initials and then goes on to state, "* C.P.P. 14.6
Effective Date 9-15-2020 * 20-959 Request for
Committee hearing due by 10/29/2020." And,

96) Defendant Dunn's claim that policy has not changed
contrasts with Defendant Moons claim that C.P.P. 14.6
was changed effective 9-15-2020. And,

97) Defendants, Cookie Crews and John Dunn, failed to
correct the actions of Defendant, Dagan Moon, to
deny Plaintiff Huffman the Grievance System.

98) Defendant Moon states in an email (Exhibit - PXP)
to Patricia Gunter that grievance, GN 20-959
(Exhibit - PXG) "should be denied due to being well
past the five buisness days past the date of the
incident". And,

99) If grievance, GN 20-959 (Exhibit - PXG), had been
rejected for being over five buisness days past the
date of the incident it would be exhausted for
lack of remedy.

100) Upon Information and Belief, Defendant Moons actions
attempting to deny Plaintiff exhaustion of the
grievance system is an attempt to annul this
very civil suit. And,

- page 16 of 27 -

101) When Plaintiff Huffman was sentenced in January 2018, he was remanded to the care of the KDOC, as a Ward of the state of Kentucky. And,

102) The KDOC is charged with the duty to protect Plaintiff Huffman because of the severely weakened status created by the condition of incarceration. And,

103) Inmates are the greatest financial interest of the KDOC. And,

104) The duty imposed on the KDOC to care for ward of state, Plaintiff Huffman, who KDOC is under the charge of the state of Kentucky, includes providing housing, care, and protection to Plaintiff Huffman. And,

105) ALL Defendants represent KDOC through extensions of their employment. All Defendants owe protection to ward of state inmate, Plaintiff Huffman. And,

106) All Defendants have a duty to act and they neglected it when they acted or failed to act as described in the facts herein. And,

107) Defendants Jordan, Moon, Barker, Rabey, Crews and Dunn have a duty of care owed to the KDOC and Plaintiff Huffman who is under the charge of their principal, the KDOC, and they neglected it. And,

108) Upon Information and Belief, Defendant Moon's actions to deny Plaintiff Huffman the grievance system, as well as Rebecca Barker's, Amy Rabey's, Cookie Crews', and John Dunn's acquiescence to his actions, were performed to not only deny him medical treatment but also to stop Plaintiff from exhausting his administrative remedies. And,

109) Upon Information and Belief, Defendant Moon's actions to deny Plaintiff Huffman the grievance system as

well as Defendant Barker's, Robey's, Crews', and Dunn's acquiescence to his actions, were performed in attempts to mitigate the culpability of All Defendants named in This Suit. And,

110) Upon Information and Belief, All Defendants have Conspired to deprive Plaintiff Huffman of his rights. And,

111) Any reasonable person will see that Defendants Williams's, Fortwengler's, Grey's, Fargy's, Johnston's, and Betz's actions, inactions, or neglect as evidenced in paragraphs 23-70, is an abuse of authority under color of law and is evil and on purpose and is evidence of the pattern and practices exercised by all Defendants. And,

112) Any reasonable person will see that Defendant Jordan's action of allowing daybed lockers in the dayroom common area of the dorms at LLCC, as evidenced in paragraphs 18-21, even though fines are enforced for Their installation Is an abuse of authority under color of law and is evil and on purpose and is evidence of the pattern and practices exercised by Defendant Jordan. And,

113) Any reasonable person will see that Defendant Moon's actions to deny Plaintiff Huffman the ability to grieve his lack of medical treatment, as described in paragraphs 72-79, is an abuse of authority under color of law, depriving Plaintiff of his rights and liberties to exercise protected conduct and is evil, and on purpose, and is evidence of the pattern and practices exercised by Defendant Moon. And,

114) Any reasonable person will see that Defendant Moon's

actions to deny Plaintiff Huffman The grievance system, as evidenced in paragraphs 72-86 is an abuse of authority under color of law, depriving Plaintiff of his rights and liberty to exercise protected conduct, and is evil, and on purpose, and is evidence of the pattern and practices exercised by Defendant Moon. And,

115) Any reasonable person will see That Defendants Barker's, Robey's, Crows's, and Dunn's inactions and neglect when Plaintiff Huffman made them aware of Defendant Moon's actions and abuse of authority, as evidenced in paragraphs 90-104, is an abuse of authority under color of law, depriving Plaintiff of his rights and liberty, and is evil, and on purpose, and is evidence of the pattern and practices exercised by Defendants Barker, Robey, Crows, and Dunn. And

116) Any reasonable person will see That Defendant Moon's action to deny Plaintiff Huffman access to The prison Legal Mail Copy System, as evidenced in paragraphs 80-86, is an abuse of authority under color of law, depriving Plaintiff of his rights and liberty to exercise protected conduct, and is evil, and on purpose, and is evidence of the pattern and practices exercised by Defendant Moon. And,

117) Plaintiff Huffman can never recover the lost benifits he was denied by All Defendants. And,

118) Plaintiff Huffman previously earned over $10,000.00 per year. And,

119) Plaintiff Huffman knows his own body and his family members will attest that the injuries to Plaintiff have changed him and Plaintiff cannot maintain a "normal

life" for the duration of his natural lifetime as a result of the injuries, lack of treatment, and abuse of authority inflicted upon him by all the Defendants. And,

120) The physical injuries to Plaintiff are permanent. And,

121) The actions, inactions, abuse of authority and neglect of all the Defendants have left the Plaintiff with irreparable Damages. And,

122) The evil actions, inactions, and neglect herein against Plaintiff Huffman are capable of repitition but evades review. And,

123) Plaintiff Huffman is not an attorney and must rely on the Court to liberally construe his complaints and pleadings. And,

124) The amount in controversy exceeds $75,000.00 excluding interest and costs. 28 U.S.C. §1332(a).

## V  Exhaustion of Legal Remedies

157) Plaintiff, James Huffman, filed grievances, GN 20-959 (Exhibit - PX G)  NG 20-1065 (Exhibit - PX H) and NG 21-318 (Exhibit - PX I) that were eroneously denied to proceed and eroneously declared non-grievable. He also made numerous attempts through appeals (Exhibits - Px K,L,M) to correct these actions in order to proceed with the grievance system. And,

158) Plaintiff, James Huffman, has exhausted his legal remedies with the grievance system as far as the KDOC will allow.

## VI  Legal Claims

159) Plaintiff, James R. Huffman IV, realleges and incorporates by reference paragraphs 1 - 158. All conditions precedent were performed or occurred.

160) The conduct and misconduct of All Defendants, as mentioned herein, has injured Plaintiff irrepairably, including depriving him of his rights and liberties, all while Defendants were abusing their authority under the color of state law, including but not limited to the following:

161) Defendants Williams, Fortwengler, Forgy, Grey, Johnston, and Betz, through their actions, inactions, and neglect of duty, as shown in paragraphs 18-21, 23-71, violated Plaintiff Huffmans rights and constitutes (a) denial of serious medical care need, (b) unnecessary and wanton infliction of pain from (i) vision problems (ii) nerve damages (iii) horrible embarrassment (iv) mental anguish (v) likely surgical pains (vi) untreated trauma (vii) likely rehabilitation struggles (viii) current and imminent injuries for the rest of his natural life, and (c) deliberate indifference to Plaintiffs serious medical need, violations of the 8th and 14th Amendments to the U.S. Constitution.

162) Defendant Moens actions to deny Plaintiff the grievance system, as shown in paragraphs 72-89, 98-99, violated Plaintiffs rights and constitutes abridging the Freedom to petition the government for redress of grievances and hiding the actions in the grievance system, a violation of the 1st Amendment to the U.S. Constitution and deprivation of due process, a violation of the 14th

Amendment to The U.S. Constitution.

163) Defendant Moons denial of Plaintiff Huffman's access to the prisons Legal Mail Copy System, as shown in paragraphs 80-85, violated Plaintiff his rights and constitutes (a) denial of freedom to access the courts, (b) deprivation of liberty, and (c) cruel and unusual punishment, violations of the 1st, 8th, and 14th Amendments to the U.S. Constitution.

164) Defendant Moons issuance of a disciplinary report for lawful protected conduct, as shown in paragraphs 81-85, violated Plaintiffs rights and constitutes (a) cruel and unusual punishment, (b) deprivation of liberty, and (c) denial of freedom to access the courts, violations of the 1st, 8th, and 14th Amendments to the U.S. Constitution.

165) Defendant Jordan's actions of allowing daybed lockers in the dayroom common area of the dorms at LLCC, as evidenced in paragraphs 18-21, violated Plaintiff Huffmans rights and constitutes (a) Cruel and unusual punishment, (b) unnecessary and wanton neglect, and (c) failure to protect, violations of the 5th, 8th, and 14th Amendments to the U.S. Constitution.

166) Defendants Barker, Robey, Crews, and Dunn's inaction and neglect of duty when made aware of Defendant Moons actions, as shown in paragraphs 90-97, violated Plaintiff Huffmans rights and constitutes (a) failure to protect, (b) Cruel and unusual punishment, and (c) due process violations, violations of the 5th, 8th, and 14th Amendments to the U.S. Constitution.

167) Plaintiff Huffman has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff Huffman has been and will continue to be injured irreparably by the conduct of All the Defendants unless the Honorable Court GRANTS the Declaratory, injunctive, and other relief which Plaintiff seeks. No Judgement or Order can remedy the injuries to Plaintiff and his rights.

168) All conditions precedent were performed or occurred.

## VII Prayer for Relief

169) WHEREFOR, Plaintiff, James R. Huffman IV, respectfully prays that this Honorable Court enters Judgement granting Plaintiff:

170) A declaration that the acts and ommissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

171) Compensatory damages for a nominal 50 percent of the total lost income Plaintiff must endure from his release date in 2033 until his retirement age of 69 in 2049, as a result of his permanent injuries, in the amount of $5,000.⁰⁰ per year for a total of $80,000.⁰⁰ against each Defendant, Jointly and Severally.

172) Compensatory damages sufficient to treat Plaintiffs injuries medically for the rest of his natural life, and or similar narrowly drawn order to ensure treatment of Plaintiffs injuries.

173) Compensatory damages to ease and aid the

physical and mental pains and sufferings of Plaintiffs injuries in the amount of $250,000.⁰⁰ against each Defendant, Jointly and Severally.

174) Punitive damages in the amount of $3,300,000.⁰⁰ against each Defendant, Jointly and Severally.

175) A Preliminary and Injuctive Order requiring (1) the KDOC to ensure Plaintiffs Timely Transport to UofL Hospital's Ortho Maxillio Faciol Surgery unit to make prepairations for corrective surgery of his face, (2) The timely Transport of Plaintiff to the UofL Hospital for corrective surgery of his face, and or similar narrowly drawn Order to ensure Plaintiff has corrective surgery of his face.

176) An Order preventing KDOC staff and officials from issuing disciplinary actions and reports to inmates to prevent inmates from grieving issues, and or similar narrowly drawn Order having same effect.

177) An Order preventing KDOC staff and officials from denying inmates access to the prison Legal Mail Copy System, and or similar narrowly drawn Order having same effect.

178) Plaintiff's costs in this suit.

179) A jury Trial on all issues Triable by jury.

180) Any additional relief this Honorable Court deems just, proper, and equitable.

This complaint has been executed by James Huffman at LaGrange Kentucky on this day, the 18th day of August, 2021.

Respectfully Presented,
All rights reserved without prejudice,

James Huffman — Plaintiff

\* Verification \*

I have read the foregoing complaint and hereby verify that the matters alleged therein to be true, except to those matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct and that I am over the age of 21, I am not a Corporation. Executed at LaGrange Kentucky on the 18th day of August, 2021 by:

8-18-21, James Huffman, c/o LLCC, 1612 Dawkins Rd, PO Box 6, LaGrange KY 40031

Notice and
\* Certificat of Services \*

This is to give notice and certify that the foregoing complaint with attachments has been filed using the "Prison Mailbox rule" and sent to

USPS # 7018 1830 0001 2089 4549

the Clerk of the U.S. District Court at
Louisville, 601 West Broadway, Rm 106,
Louisville Kentucky 40202 via postage
prepaid registered U.S. mail, on this day
the 18TH of August, 2021. I declare under penalty
of perjury the the foregoing is true and correct.

James Huffman - Plaintiff
c/o LLCC
1612 Dawkins Rd, PO Box 6
LaGrange Ky 40031

# \* APPENDIX of ATTACHED EXHIBITS \*

- Exhibit - PX A - Disciplinary Report DR# LLCC-2020-0001268 ——————— Total - 7 pages
- Exhibit - PX B - Affidavit from Michael S. Hunter — Total - 1 page
- Exhibit - PX C - James Huffmans medical chart from 5-25-2020 to 11-5-2020 ——— Total - 114 pages
- Exhibit - PX D - X-rays of James Huffman's face and x-ray report by William Betz ——— Total - 5 pages
- Exhibit - PX E - MRI of James Huffmans head report by Malisa Lester, MD ——— Total - 2 pages
- Exhibit - PX F - James Huffmans bed assignment chart ——— Total - 3 pages
- Exhibit - PX G - Grievance GN 20-959 ——— Total - 3 pages
- Exhibit - PX H - Grievance NG 20-1065 ——— Total - 2 pages
- Exhibit - PX I - Grievance NG 21-318 ——— Total - 2 pages
- Exhibit - PX J - Disciplinary Report DR# LLCC-2021-0001195 ——— Total - 3 pages
- Exhibit - PX K - Appeal to Rebecca Barker ——— Total - 5 pages
- Exhibit - PX L - Appeal to Amy Robey ——— Total - 2 pages
- Exhibit - PX M - Appeal to Cookie Crews ——— Total - 4 pages
- Exhibit - PX N - Letter from John Dunn ——— Total - 1 page
- Exhibit - PX O - Open Record Request ——— Total - 4 pages
- Exhibit - PX P - Emails from Dagen Moon ——— Total - 4 pages

James Huffman
296645 LLCC
PO Box 6
LaGrange KY 40031

AM. COMP.
191 pages



Clerk
US Dist. Courthouse
Room 106,
601 West Broadway
Laisville KY 40202

LEGAL MAIL

7016 1830 0001 2089 4549

NEOPOST
08/18/2021
US POSTAGE $006.45⁰
ZIP 40031
041M11458349

21 AUG 20 PM 4:11
FILED SCOTT CLERK
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY