UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES RICHARD HUFFMAN IV      Plaintiff

v.      Civil Action No. 3:21-CV-P217-RGJ

KATHERINE WILLIAMS, *et al.*      Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss filed by Defendants Jessica Fortwengler, MD, and Sasha Grey, LPN, in their individual and official capacities. [DE 23] Plaintiff James Richard Huffman IV, who is proceeding *pro se*, filed a Response [DE 29], Defendants filed a Reply [DE 30], and Plaintiff filed a Surreply. [DE 34] For the reasons that follow, Defendants' Motion to Dismiss will be granted in part and denied in part.

**I.**

Plaintiff is a convicted inmate at the Luther Luckett Correctional Complex (LLCC). He filed the Complaint [DE 1] pursuant to 42 U.S.C. § 1983 against Katherine Williams, a nurse at the LLCC during the time period in question; Jessica Fortwengler, a doctor at LLCC; Sasha Grey, Courtney Forgy, and Shane Johnston, nurses at LLCC; William Betz, a radiologist at Trident Care; and LLCC Warden Scott Jordan. He sues each Defendant in his or her individual and official capacities. Plaintiff states in the body of his Complaint that Defendants Williams, Fortwengler, Grey, Forgy, and Johnston are employees of "Wellpath Correct Care Solutions," which the Court construes to be WellPath, LLC ("Wellpath").

Plaintiff states that he was involved in an altercation with another inmate on May 25, 2020. He reports that the other inmate "struck [him] in the back of his head knocking him face first into

daybed locked #one." He continues, "As the locker was made of hard metal, Plaintiff was rendered unconscious. Hayes then proceeded to mount Plaintiff and strike him repeatedly in the face." Plaintiff details in the Complaint his attempts to obtain medical treatment from the medical provider Defendants for his injuries. He reports that he was finally seen by surgeons on September 18, 2020, who "informed him of the limited options available for treatment due to the extreme delay in his arrival at the hospital." He further alleges the following:

> They also informed him that the bones in his face had set incorrectly and in order to set them into their proper positions the team would have to rebreak the bones with a huge risk of causing even further damage than the initial trauma along with unavoidably restarting the healing process and its pains over again. As such, the surgeons did not favor this option as much as they favored the option of inserting a plastic fitting to hopefully lift his left eye up, over and out to its proper position for both corrective and aesthetic purposes. Plaintiff still suffers double vision due to this injury and suffers sever pain and embarrassments from having to constantly close one eye to see. He still has pain in the muscle that controls this region and cannot feel the lower half of his eye socket, cheek, nostril, and his upper teeth on his left side due to the bones putting pressure on the nerves there. At times, Plaintiff has to manipulate his eye into a better position to see. As such, he suffers many permanent damages due to the deliberate indifferences at the hands of all the parties involved.

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief in the form of "ensur[ing] corrective surgery."

Upon initial review of the Complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs to proceed against Defendants Williams, Fortwengler, Grey, Forgy, Johnston, and Betz in their individual and official capacities. [DE 13].

## II.

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). In addition, "[a] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The duty to be less stringent with *pro se* complainants, however, does not require the Court to "abrogate basic pleading essentials," *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), or to create a claim for a *pro se* plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975).

In his Response and Sur-reply to Defendants' Motion to Dismiss, Plaintiff asserts new allegations and attaches documentation in support of his claims. "As a general rule, a court considering a motion to dismiss 'must focus only on the allegations in the pleadings.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). "This does not include [a plaintiff's] response[] to a motion to dismiss." *Id.* A plaintiff "cannot 'amend [his] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.'" *Id.* "'If a complaint fails to state a claim even under the liberal requirements of the federal rules,

3

the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.'" *Bates*, 958 F.3d at 484 (quoting *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)). The Court, therefore, will not consider Plaintiff's new allegations or evidence in considering the Motion to Dismiss.

## III.

**A. Individual-capacity claims**

A prison official exhibits deliberate indifference in violation of the Eighth Amendment by, among other things, intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). An Eighth Amendment medical claim has both an objective and a subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834). For the subjective component, the prisoner must show that the "defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

*1. Defendant Dr. Fortwengler*

Other than listing Dr. Fortwengler as a Defendant, Plaintiff states no facts in the Complaint involving Dr. Fortwengler. Attached medical records to the Complaint reveal that on July 27, 2020, Defendant Dr. Fortwengler performed a "Chart review for A&D ointment justification" and canceled the treatment finding "no documentation for justification of long term A&D ointment."

[DE 1-5, pp. 42-43]. This is the only medical record pertaining to Defendant Dr. Fortwengler, and it does not appear that she actually saw Plaintiff or otherwise treated his facial injuries.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Court is aware of its duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing each Defendant with "fair notice of the basis for his claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."). Moreover, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 691 (1978). "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Because Plaintiff states no facts regarding the personal involvement of Defendant Dr. Fortwengler in the events giving rise to the Complaint, the Court will grant the Motion to Dismiss the individual-capacity claims against Defendant Dr. Fortwengler for failure to state a claim upon which relief may be granted.

  *2. Defendant Grey*

In the Complaint, Plaintiff alleges that he sustained injuries in an altercation with another inmate on May 25, 2020, which "rendered [Plaintiff] unconscious" and alleges that another inmate stopped the fight and "escorted Plaintiff to the shower once he began to regain consciousness. Due to the extent of trauma received by the breakage of Plaintiffs facial bones, Plaintiff passed out in his bed and awoke the next morning still in a semi-state of consciousness." [DE 1-1, pp. 3-4]. He reports being taken to the LLCC Medical Unit on the following day, where the following events occurred:

> Nurse Sasha Grey screened Plaintiff for a Pre-Segregation Screening[]. Nurse Grey was deliberately indifferent to Plaintiffs medical needs, refusing to send Plaintiff to an emergency care facility or provide Plaintiff with any medical care. Instead, Nurse Grey released him from Medical to be escorted to Restricted Housing Unit ("RHU") for segregation with only a prescription for Aspirin . . . that Wellpath staff denied to dispense to Plaintiff. That evening, Plaintiff obtained a sick-call form from the duty nurse and filled it out and turned it into the nurse.
>
> On May 27th, 2020 Nurse Grey saw Plaintiff for Sick-Call concerning his traumatized face . . . . Nurse Grey was again deliberately indifferent to Plaintiffs medical needs, refusing to send him to an emergency care facility or provide Plaintiff with any medical care. Grey notes in her log that Plaintiffs face is asymmetrical, bruised and swolled . . . . This photo [which he attached to his complaint, DE 1-3, p. 5] proves along with the notes that Nurse Grey was aware of the severe trauma done to Plaintiffs face. Nurse Grey then scheduled a medical Provider Sick-Call and returned Plaintiff to his RHU cell [].

[DE 1-1, pp. 4-5]

Based on these facts, the Court, as it did on initial review, continues to find that the Complaint contains sufficient factual matter, accepted as true, to state an Eighth Amendment claim of deliberate indifference to a serious medical need against Defendant Grey that is plausible on its face. Thus, Defendants' Motion to Dismiss will be denied against Defendant Grey in her individual capacity.

**B. Official-capacity claims**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55)). Thus, the official-capacity claims against Defendants Dr. Fortwengler and Grey are actually against their employer, Wellpath.

The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private entity that performs traditional state functions. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'" (citations omitted)). Further, the Sixth Circuit has held that "[i]t is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).

To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a

government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). To properly assert a municipal or corporate custom or policy, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A corporate entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

Defendants argue that Plaintiff's Complaint does not allege that his injury, or purportedly deficient medical treatment, was the result of a corporate policy or custom. The Court agrees. While Plaintiff alleges action or inaction on the part of the individual Wellpath employees, he does not allege a policy or custom under any of the four ways listed above on the part of Wellpath that caused him harm. And "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

In his Response, Plaintiff alleges "that it is the custom of Wellpath and its employees to be deliberately indifferent to his serious medical needs as he has suffered a prior facial fracture and received ZERO Medical attention for it in 2018 at LLCC." [DE 29, p. 8]. He further alleges that

"Wellpath is deliberately indifferent to needs of other prisoners . . . . In the March 2021, Vol. 32, No. 3 issue of Prison Legal News it is claimed that sources 'found that Wellpath and CCS have been su[e]d a total of 1,395 times since 2003. A 2019 report by CNN noted that the lawsuits alleged the firm had a role in 70 deaths.'" [*Id.*] He additionally contends that "it is the custom and practice of Wellpath and its employess to be deliberately indifferent to his and other inmates medical needs, to destroy evidence, and other despicable practices in order to cut costs, maximize its revenue, and fight torts." [*Id.* at 9]. Plaintiff, however, does not plead these facts in his Complaint. And as the Court already indicated earlier in this Opinion, Plaintiff cannot raise new allegations in his Response to the Motion to Dismiss, and he has not filed an amended complaint asserting a Wellpath policy or custom.

Consequently, the Motion to Dismiss the official-capacity claims against Defendants Dr. Fortwengler and Grey will be granted and the official-capacity claims against all Wellpath employees will be dismissed.

### IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1) Defendants' Motion to Dismiss [DE 23] is **GRANTED** with respect to the individual-capacity claims against Defendant Dr. Fortwengler and the official-capacity claims against Defendants Dr. Fortwengler and Grey and **DENIED** in all other respects.

2) The individual-capacity claims against Defendant Dr. Fortwengler are **DISMISSED**.

3) The official-capacity claims against all Wellpath employees (Dr. Fortwengler, Grey, Forgy, Johnston, and Williams) are **DISMISSED**.

    4)        As all claims against Defendant Dr. Fortwengler have been dismissed, **the Clerk of Court is DIRECTED to terminate** that Defendant as a party to this action.

    5)        The individual-capacity claims against Defendant Grey shall continue.

Date: September 29, 2022

                                        Rebecca Grady Jennings, District Judge
                                        United States District Court

cc:       Plaintiff, *pro se*
           Counsel of record
A961.005