**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**JAMES RICHARD HUFFMAN IV** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:21-CV-P217-JHM**

**KATHERINE WILLIAMS *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 civil-rights action initiated by James Richard Huffman IV. This matter is before the Court on the motion for summary judgment filed by Defendants Cookie Crews, Amy Robey, and Scott Jordan (DN 225).[1] Plaintiff has filed a response (DN 238), and Defendants have filed a reply (DN 249). This matter is ripe for adjudication. For the following reasons, Defendants' motion for summary judgment will be granted.

**I.**

During all times relevant to this action, Plaintiff was incarcerated as a convicted prisoner at Luther Luckett Correctional Complex (LLCC). Defendant Crews is the Kentucky Department of Corrections (KDOC) Commissioner; Defendant Jordan is the former LLCC Warden; and Defendant Robey is the current LLCC Warden.

In the superseding amended complaint, Plaintiff alleged that he was involved in a fight with another inmate on May 25, 2020, at LLCC. DN 100-15, PageID #1575. He alleged that during the fight, he fell into a daybed locker which caused him to suffer "severe facial trauma, which included broken bones." *Id.*, PageID #1578. Plaintiff further alleged that the daybeds were hard, sharp metal; placed in unsafe places; and a threat to the prisoners' safety and security. *Id.*

[1] These Defendants are also known as the "State Defendants." The medical-provider Defendants have filed separate motions for summary judgment.

Plaintiff maintained that Defendants Jordan, Robey, and Crews were aware of the unsafe condition the daybed lockers created and that they paid fines instead of removing them from LLCC, ignoring their duty to care and protect LLCC prisoners.

Plaintiff also alleged that he was x-rayed for his facial injuries and was told on June 4, 2020, that he did not have any fractures in his face. *Id.*, PageID #1581. Plaintiff stated that on July 23, 2020, he underwent a CT scan of his face outside the prison and that the report from the scan found "[]multiple left-sided facial bone fractures," and noted "significant soft tissue damage, swelling, herniated fat to the orbital." *Id.*, PageID #1582. Plaintiff further alleged that on September 18, 2020, he saw a surgeon from the University of Louisville who informed him that "the delay in his arrival had allowed the bones to heal and set improperly and as such his remedies and medical aid had now been severely restricted; with many of his injuries permanently irreparable." *Id.*, PageID #1586.

Plaintiff asserted that Defendants Jordan, Robey, and Crews engaged in "unconstitutional conduct and acquiesced in the unconstitutional conduct of their offending subordinates when they became aware of Plaintiff's serious medical needs and ignored them"; "engaged in and supervised the use of dilatory tactics to deny his needs"; and "promulgated, ordered, and enforced informal policies to deny his medical needs, which all resulted in deliberate indifference to his serious medical needs." *Id.*, PageID #1594.

Upon initial review of the superseding amended complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Eighth Amendment claims for deliberate indifference to Plaintiff's safety regarding the daybeds and deliberate indifference to Plaintiff's serious medical needs regarding his facial injuries to proceed against Defendants Crews, Jordan, and Robey in their individual

capacities. The Court also allowed official-capacity claims to proceed against Defendants Crews and Robey for injunctive relief with regard to his request for surgery.[2]

Defendants Crews, Jordan, and Robey then filed a motion to dismiss Plaintiff's claims against them (DN 132). In the Memorandum Opinion and Order in which the Court ruled upon the motion, the Court dismissed Plaintiff's claims against Defendants Crews and Robey for deliberate indifference to his safety as barred by the applicable statute of limitations (DN 195).

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] The Court also allowed official and individual capacity claims to proceed against five employees of Wellpath, Inc. (hereinafter "Wellpath"), which is the entity the state had contracted with to provide medical care to its prisoners.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**III.**

In their motions for summary judgment, Defendants argue that they are entitled to judgment in their favor both on the merits of Plaintiff's claims against them and because Plaintiff failed to exhaust his administrative remedies. They additionally argue that they are entitled to qualified immunity. Because the Court is deciding the motion on the merits of Plaintiff's claims, the Court does not address Defendants' exhaustion or qualified immunity arguments herein.

**A. Deliberate Indifference to Safety**

As stated above, the Court allowed an Eighth Amendment claim for deliberate indifference to Plaintiff's safety claim to proceed against Defendant Jordan in his individual capacity based upon Plaintiff's claim that he was seriously injured by a daybed locker at LLCC.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "It is not, however, every injury suffered by one prisoner . . . that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Indeed, to state a constitutional claim, a prisoner must satisfy "both a subjective and an objective component." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). First, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, the official must have acted with "deliberate indifference" to inmate safety. *Farmer*, 511 U.S. at 834. To show deliberate indifference, a court must find that the prison official (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, (2) drew the inference, and (3) disregarded the excessive risk to inmate safety by failing to act. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 944 (6th Cir. Nov. 18, 2022) (citing *Farmer*, 511 U.S. at 837). Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 837.

In their motion for summary judgment, Defendants argue that they are entitled to judgment as a matter of law on this claim because Plaintiff has failed to present evidence which satisfies either the objective or subjective component of the above standard. They argue that Plaintiff has failed to present evidence that shows that the daybed lockers posed a substantial risk of harm to LLCC prisoners or that Defendant Jordan knew that the daybed lockers posed a substantial risk to LLCC prisoners and disregarded that risk.

As to the whether the daybed lockers posed a substantial risk of serious harm, Defendants argue that although Plaintiff suggests in the superseding amended complaint that LLCC's use of the daybed lockers violated a federal or state safety standard which caused LLCC to be required

to pay fines, this is not true. Crews Aff., DN 225-7, ¶ 6; Jordan Aff., DN 225-8, ¶74; Robey Aff., DN 225-8, ¶ 5. Moreover, Defendants all aver that they are unaware of any history of injuries to inmates caused by the daybed lockers at LLCC and note that Plaintiff's injuries were actually caused by his decision to attack another inmate which resulted in him falling on one of the daybed lockers. Crews Aff., DN 225-7, ¶ 8; Jordan Aff., DN 225-8, ¶ 8; Robey Aff., DN 225-8, ¶ 5. In his response, Plaintiff argues that the evidence that the daybed lockers posed a substantial risk of harm to LLCC prisoners is established by the fact when he fell on a daybed locker it caused him multiple facial fractures. He also presents as evidence his own affidavit in which he avers that the daybed lockers "extend into the heart of the dayrooms, are a little over 12 inches high, are the only fixtures in the prison with 90 degree corners and edges, are hard reinforced steel, are made to support the weight of a large man because they are a step into the daybeds." DN 238-8, Pl. Aff., ¶ 27.

With regard to whether Defendant Jordan knew that the daybed lockers posed a substantial risk of serious harm to LLCC prisoners and disregarded that risk, Defendant Jordan avers that he did not and states that he was unaware of any history of injuries to inmates cause by the daybed lockers at LLCC. Jordan Aff., DN 225-8.

Because there is no disputed issue of fact as to this claim, it turns on a question of law. The Court finds that Defendant Jordan is entitled to judgment as a matter of law because the evidence does not establish that the daybed lockers posed a substantial risk of serious harm to LLCC prisoners or that Defendant Jordan disregarded any such risk. The Court finds most persuasive Defendants' evidence that they are unaware of any other inmate ever being seriously injured by the daybed lockers at LLCC. Additionally, there is case law which supports Defendants' argument that Plaintiff's claim is without merit. *See, e.g.*, *White v. Neal*, No. 3:22-CV-411-DRL-JEM, 2023

U.S. Dist. LEXIS 65685, at *3-4 (N.D. Ind. Apr. 13, 2023) (dismissing claim for deliberate indifference to safety where prisoner was injured during work duty when a steel cart rolled over his toe, fracturing it, and the prisoner argued he should have been provided safety boots, stating "though Mr. White's great toe injury was a tragic accident, he has not shown that the actions of [the defendants] amount to anything more than negligence."); *Hawkins v. Carter*, No. 3:18-CV-774-PPS-MGG, 2021 U.S. Dist. LEXIS 111820, at *14-15 (N.D. Ind. June 15, 2021) (granting summary judgment to the defendant prison officials where the plaintiff was injured by a steel horseshoe during a fight in the prison's recreation area and argued that prison officials were deliberately indifferent to his safety because they should have had lighter and less dangerous horseshoes in the prison instead).

Plaintiff's claim is also akin to a slip-and-fall case. "[F]ederal courts have nearly unanimously held that a slip and fall, without more, does not amount to cruel and unusual punishment." *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017) (citation and quotation omitted); *see White v. Tyszkiewicz*, 27 F. App'x 314, 315 (6th Cir. 2001); *Nali v. Mich. Dep't of Corr.*, No. 2:07-CV -255, 2009 U.S. Dist. LEXIS 86285, at *13 (W.D. Mich. Aug. 6, 2009) ("[W]hile an icy prison yard walkway presents the possibility for an inmate to slip and fall, it does not pose a substantial or excessive risk of serious harm."), *report and recommendation adopted by*, 2009 U.S. Dist. LEXIS 86214 (W.D. Mich. Sept. 21, 2009).

Thus, the Court concludes that Defendant Jordan is entitled to judgment as a matter of law as to Plaintiff's claim that he was deliberately indifferent to Plaintiff's safety.

**B. Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits prison officials from showing deliberate indifference to a convicted prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate indifference claim "has objective and subjective components." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "The objective component requires the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id*. (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). For purposes of this Memorandum Opinion and Order, the Court will assume that Plaintiff's allegations satisfy the objective component of this standard. Thus, the Court need only analyze the second component herein.

As to the second, subjective component, "the plaintiff must show that [the] defendant acted with a mental state 'equivalent to criminal recklessness'" in response to the plaintiff's serious medical need. *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)). Such a "showing requires proof that [the] defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Id*. (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal quotation marks omitted)). Differences in judgment between a prisoner and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to establish a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). The Sixth Circuit distinguishes "between cases where [there is] a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In their motion for summary judgment, Defendants argue that they are entitled to judgment on this claim because they have presented evidence which shows that they did not know of Plaintiff's injuries until he filed the instant action, *see* Crews Aff., DN 225-6, ¶ 11; Jordan Aff., DN 225-8, ¶ 9; Robey Aff., DN 225-9, ¶ 8, and even if they did know of Plaintiff's injuries, they are entitled to rely on the medical judgments of LLCC's medical staff, who were employed by Wellpath.

As to Defendants' first argument, Plaintiff submits evidence which shows that Defendant Robey learned about his injuries in "early August 2020" when he told her about how "Wellpath ran the medical unit refusing to treat my facial injury or send me to the hospital, and that it had been almost a month since my CT scan confirming my face broke, and that that [Wellpath] was being deliberately indifferent to my serious medical needs." DN 238-8, ¶ 23. Accepting Plaintiff's evidence as true, the Court nonetheless agrees with Defendants that Defendant Robey was entitled to rely on the medical judgment of the prison medical staff in treating Plaintiff. *In Mitchell v. Hininger*, the plaintiff complained to the assistant warden of his facility about a serious medical need and delays in his treatment. 553 F. App'x 602, 607 (6th Cir. Apr. 4, 2014). The plaintiff argued that the assistant warden should have intervened on the plaintiff's behalf. *Id.* However, the Sixth Circuit held that this evidence failed to establish an Eighth Amendment claim because "lay officials may generally rely on medical staff's medical judgments." *Id.* (citing *Spears v.*

*Ruth*, 589 F.3d 249, 255 (6th Cir. 2009)). The court reasoned, "[The plaintiff] cannot show that [the assistant warden was] aware of [any] mistreatment. At most, [the assistant warden was] aware that [the plaintiff] wanted more treatment than the medical staff was providing. Failure to act in such a situation does not deliberate indifference make." *Mitchell*, 553 F. App'x at 607-608. In this case as well, Plaintiff's evidence establishes that Defendant Robey knew, based upon Plaintiff's report to her, that he was receiving some care for facial injuries, just not in the time and manner he believed was appropriate. Thus, the Court concludes that no reasonable jury could find that Plaintiff's evidence establishes that Defendant Robey acted with deliberate indifference to his serious medical needs by failing to intervene in the medical care she knew Plaintiff was receiving from LLCC's medical staff. *See also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (holding that corrections officers do no act with deliberate indifference to a serious medical need when "they reasonably rely on the assessments made by the medical staff"); *Ronayne v. Ficano*, 173 F.3d 856 (6th Cir. 1999) (unpublished table decision) ("Supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care."); *Hamilton v. Pike Cnty., Ky.*, No. 11-99, 2013 U.S. Dist. LEXIS 18317, at *22 (E.D. Ky. Feb. 11, 2013) ("Non-medical prison officials, such as Jailer Scott, act reasonably when they rely on the judgment of the prison medical staff.").

As to Plaintiff's argument that Defendants, as State prison officials, should be liable for any constitutional injuries caused to Plaintiff by Wellpath, its custom or policies, or its employees, since the State contracted with Wellpath to provide medical care to its prisoners and had inadequate policies concerning medical care for prisoners, Plaintiff has presented no evidence that these Defendants were responsible for contracting with Wellpath or for drafting the State policies that Plaintiff believes were inadequate.

Finally, although the Court allowed official-capacity claims against Defendants for injunctive relief under the *Ex parte Young* doctrine[3] to obtain corrective surgery for his facial fractures, because Plaintiff has failed to establish an underlying constitutional violation involving these Defendants, his request for injunctive relief under also fails. *See Jabr v. Ohio Dep't of Tax'n*, No. 23-3881, 2024 U.S. App. LEXIS 9840, at *3-4 (6th Cir. Apr. 23, 2024) (citing *Saha v. Ohio State Univ.*, 259 F. App'x 779, 780 (6th Cir. 2008)); *Pasha v. Payton*, No. 20-55552021 U.S. App. LEXIS 27505, at *10 (6th Cir. Sept. 13, 2021) (citing *Saha*, 259 F. App'x at 780).

Thus, the Court concludes that Defendants are entitled to judgment in their favor as a matter of law as to Plaintiff's Eighth Amendment claims against them for deliberate indifference to a serious medical need.

**IV.**

For these reasons set forth herein, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 225) is **GRANTED**.

Date: September 2, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.011

[3] Under *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may seek injunctive relief against state officials in their official capacities to end a continuing violation of federal law. *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).